UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| In Re: | Case Number 13-10051-DF |
|---|---|
| William R. Overdeep and Cynthia C. Overdeep | Chapter 7 |

Loss Mitigation Status Report filed by Ocwen Loan Servicing, LLC

Now comes Ocwen Loan Servicing, LLC, ("Ocwen"), as loan servicer for Wells Fargo Bank, N.A., as Trustee for SABR Trust 2004-OP1, Mortgage Pass-Through Certificates, Series 2004-OP1 (hereinafter "Wells Fargo") and files this Loss Mitigation Status Report in advance of the Court's August 21st, 2013 hearing scheduled in this matter.  Specifically, this Report addresses, inter alia, two issues raised at the last hearing held before the Court on July 10, 2013, namely (a) whether Ocwen has or will request a waiver of the anti-modification provisions contained in the Pooling and Servicing Agreement (the "PSA") governing Wells Fargo's administration, as trustee of the SABR Trust 2004-OP1 (the "Trust") of the Trust and (b) to what extent, if any, does the subject loan fall within the ambit of the National Mortgage Settlement between the nations' five largest mortgage servicers (including Wells Fargo & Company), the Attorney General of the United States and 49 state attorneys general in February of 2012 (hereinafter the "NMS").

<u>Ocwen will Request a Waiver from the Pool Trustee to Enable It to Consider
The Debtors for Loan Modification Eligibility</u>

Trust provisions currently restrain Ocwen's ability to consider the Debtors for any extended loan modification or forbearance option.  Specifically, the Section 3.07 of the PSA provides, in relevant part, that the servicer may "(ii) extend the due dates for the Scheduled Payments due on a Mortgage Note for a period of not greater than 360 days" [the full text of Section 3.07 appears at Exhibit A; the web path for accessing the full text of the PSA on SEC's Edgar search engine appears at the bottom of Exhibit A].

Section 2(B) of the HAMP Servicing Participation Agreement between Fannie Mae and Ocwen (the "SPA") provides, in relevant part, as follows: "Servicer shall use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consents, waivers and delegations that are required, by contract or law, in order to perform such

1

Services." Section 2(C), in turn, states that in the event the Servicer, despite exercise of such reasonable efforts, is unable to procure such waivers or consents that such Servicer shall not be required to perform the Services set forth in the SPA.

Upon inquiry by undersigned counsel, Ocwen has agreed to pursue the necessary waivers/consents from Wells Fargo in its capacity as Trustee of the Trust that would enable Ocwen to consider the subject loan for modification. Ocwen has advised undersigned counsel that the process of securing a decision on the waiver request can take up to sixty (60) days. The fact that Ocwen will attempt to secure such waivers/consents is in no way intended or to be construed as an indication that the Debtors will qualify for any loan modification program. Moreover, as discussed below, it appears to undersigned counsel, based on a review of the Schedules I and J in this matter [Schedule J currently reflecting a negative monthly net income of $2,031.20] that the prospects for a determination of eligibility under any loan modification program are less than promising barring a significant, positive change in the Debtors' combined monthly income.

<u>The Loan Does Not Appear to Fall within the Ambit of the National Mortgage Settlement</u>

Reported decisions at the state and federal level making any mention of the National Mortgage Settlement ("NMS") are relatively sparse. Undersigned counsel's search, which counsel does not claim to be exhaustive, netted 0 hits at the U.S. Court of Appeals level, 9 hits at the Federal District Court level, 1 at the U.S. Bankruptcy Court level and three at the "all states" level. Copies of the respective search results are attached hereto as Exhibit B. While not dispositive in and of itself, it is noted that none of these cases involved suits against the respective servicing banks in their capacities as trustee(s) of any mortgage backed securities trust(s).

None of the aforementioned cases address the issue of loans held in securitized trusts and their eligibility, or lack thereof, for relief under the NMS. What these cases do make clear is that a borrower has no standing to enforce the terms of the NMS. The Consent Judgment implementing the NMS vests

2

such authority exclusively in the Parties to such Judgment and the Monitoring Committee.  Venue for such enforcement actions is confined to the U.S. District Court for the District of Columbia.  See *Habib v. Bank of Am.*, 13-cv-10853, Order Granting Defendant's Motion to Dismiss, July 15, 2013 [E.D. Mich. 2013]; *JP Morgan Chase Bank Nat'l Ass'n v. Ackley,* No.3-144/12-1338 (Iowa App. 2013) [copies at Exhibit C].

      Counsel's review of secondary sources strongly suggests that relief under the NMS is confined to mortgage loans owned or serviced by the five settling banks in their individual corporate capacities rather than in their capacities as mere trustees of mortgage-backed securities' trusts   where the trust res is owned by series of independent investors.  First, various state Attorneys General that served on the Executive Committee that negotiated the NMS maintain a website at www.nationalmortgagesettlemen.com.  The FAQ section of this NMS website poses the following question: Will investors in mortgage-backed securities ultimately pay for part of this settlement?  The answer, in relevant part states:

> "Participating banks own the vast majority of the mortgage loans that this settlement is expected to affect.  The settlement could affect some investor-owned loans, depending on existing agreements servicers have with those investors" [see Exhibit D].

In other words, most of the eligible loans are those owned by one of the five (5) participating servicers in their individual corporate capacities; in some instances loan which are owned by private investors but <u>serviced</u> by one of the five participating servicers could also be eligible depending on the servicer's contract with the particular investor(s).  In this case, Wells Fargo Bank, N.A. neither owns the loan in its individual capacity as a national bank nor does Wells Fargo Bank, N.A. service the subject loan.  The loan thus appears ineligible for relief under the NMS.

      This view is supported by an overview of the NMS contained in a summary of amendments then proposed by the Consumer Financial Protection Bureau ("CFPB") to Regulation X which regulation implements the Real Estate Settlement Procedures Act of 1974 ("RESPA").  The summary appears on a

3

website sponsored by the Cornell e-Rulemaking Initiative (CeRI) which organization professes to be working on a pilot project called the "Regulation Room" in concert with the CFPB to enhance "public understanding and participation in Bureau rulemaking." The website at http://regulationroom.org is not an official government website. The extent of the CFPB's self-described "partnership" with the CeRI is described in a post accessible on the CFPB's official website a copy of which is annexed hereto as Exhibit E. The CeRI's summary of the NMS contains the following statement:

> "The National Mortgage Settlement applies to loans held in portfolio and serviced by the five largest servicers. Loans owned by GSEs, private investors, or smaller servicers are not covered by the settlement."

RESPA Preamble, Home Mortgage Consumer Protection found at http://regulationroom.org, pages 11 and 12 of 121 [see Exhibit F].

Finally, the press release made by Wells Fargo on the day the NMS was consummated reinforces undersigned's counsel conclusion that the NMS does not apply to loans which, as is the case with the subject loan, are neither owned by nor serviced by Wells Fargo Bank, N.A. in its individual capacity as a national bank (or by its servicing division, Wells Fargo Home Mortgage). This press release appears at Exhibit G and confines relief under the NMS to loans "owned and serviced by Wells Fargo".

Absent in Significant Increase in Average Monthly Income
The Debtors' Prospects for Modification are Not Promising

The Debtors' Schedule J reflects negative monthly net income of $2,031.20. If the scheduled mortgage expense of $2,430.61 is removed, the total of the Debtors' other monthly expenses as scheduled exceeds their average monthly income by only $399.41. Based on a current tax assessment of $420,500.00 and a tax rate of $15.86 [see Exhibit H], yearly taxes are in the approximate sum of $6,661.20. If one-twelfth ($555.10) of the yearly taxes are added to the Debtors' scheduled monthly expenses, their scheduled expenses exceed scheduled monthly net income by $155.59 even with a $0.00 mortgage payment. It is on this basis that one must conclude that the Debtors' eligibility prospects for modification are not promising absent a significant increase in average monthly income.

Summary

Ocwen will seek a waiver of the provisions of the trust which currently prevent it from considering the Debtors for any long-term relief by way of a modification or forbearance. This process is expected to take approximately 60 days. All available references consulted by undersigned primary counsel for Ocwen suggest that the subject loan is not eligible for relief under the National Mortgage Settlement. It is clear, in any event, that the Debtors have no standing to enforce the provisions of such Settlement even if it were construed to apply to the subject loan. Notwithstanding Ocwen's pursuit of a waiver of the trust restrictions on modification, the Debtors' Schedules as filed and barring subsequent amendment reflecting a significant increase in average monthly income do not bode well for the Debtors' prospects of qualifying for a modification.

Dated: August 20, 2013

Respectfully Submitted,

Ocwen Loan Servicing, LLC,
by its attorneys,

/s/ Lynn Bouvier Kapiskas
Lynn Bouvier Kapiskas, Esq.
RI#3921
Law Offices of Mark L. Smith
176 Eddie Dowling Highway
North Smithfield, RI 02896
Tel: 401-769-4120
(Local Counsel)

/s/ John S. McNicholas
John S. McNicholas, Esq.
RI#8732
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824
Tel: 978-256-1500
bankruptcy@kordeassoc.com
(Primary Counsel)

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| In Re: | Case Number 13-10051-DF |
| William R. Overdeep and Cynthia C. Overdeep | Chapter 7 |

**CERTIFICATE OF SERVICE**

I, John S. McNicholas, Esq., Attorney, Korde & Associates, P.C., Attorney for **Wells Fargo Bank, N.A., as Trustee for SABR Trust 2004-OP1, Mortgage Pass-Through Certificates, Series 2004-OP1 and/or its successors and assigns** hereby certify that on August 20, 2013 I electronically filed the foregoing *Loss Mitigation Status Report* with the United States Bankruptcy Court for the District of RI using the CM/ECF System. I served the forgoing documents on the following CM/ECF participants;

Gary L. Donahue, U.S. Trustee
Andrew S. Richardson, Trustee
Russell D. Raskin, Esquire

I certify that I have mailed by first class mail, postage prepaid the documents electronically filed with the Court on the following non-CM/ECF participants:

William R. Overdeep
1621 Old Smithfield Road
North Smithfield, RI 02896

Cynthia C. Overdeep
1621 Old Smithfield Road
North Smithfield, RI 02896

/s/ John S. McNicholas
John S. McNicholas, Esquire
RI#8732
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100
Tel: (978) 256-1500