OPTION ONE MORTGAGE CORPORATION,

Servicer and Responsible Party,

and

WELLS FARGO BANK, NATIONAL ASSOCIATION,

Trustee

---

POOLING AND SERVICING AGREEMENT

Dated as of March 1, 2004

---

SABR TRUST 2004-OP1

MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2004-OP1

=============================================================================

<PAGE>

## TABLE OF CONTENTS

### ARTICLE I

### DEFINITIONS

### ARTICLE II

### CONVEYANCE OF MORTGAGE LOANS; REPRESENTATIONS AND WARRANTIES

| | | |
|---|---|---|
| Section 2.01 | Conveyance of Mortgage Loans.................................... | |
| Section 2.02 | Acceptance by the Trustee of the Mortgage Loans................. | |
| Section 2.03 | Representations, Warranties and Covenants of the Responsible Party and the Servicer; Remedies for Breaches of Representations and Warranties with Respect to the Mortgage Loans......................................... | |
| Section 2.04 | [Reserved]....................................................... | |
| Section 2.05 | Execution and Delivery of Certificates........................... | |
| Section 2.06 | REMIC Matters.................................................... | |
| Section 2.07 | Representations and Warranties of the Depositor.................. | |

### ARTICLE III

### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

| | | |
|---|---|---|
| Section 3.01 | Servicer to Service Mortgage Loans............................... | |
| Section 3.02 | Subservicing Agreements between the Servicer and Subservicers..................................................... | |
| Section 3.03 | Successor Subservicers........................................... | |
| Section 3.04 | Liability of the Servicer........................................ | |
| Section 3.05 | No Contractual Relationship between Subservicers and the Trustee......................................................... | |
| Section 3.06 | Assumption or Termination of Subservicing Agreements by Trustee......................................................... | |
| Section 3.07 | Collection of Certain Mortgage Loan Payments..................... | |
| Section 3.08 | Subservicing Accounts............................................ | |
| Section 3.09 | Collection of Taxes, Assessments and Similar Items; Escrow Accounts................................................. | |
| Section 3.10 | Collection Account............................................... | |
| Section 3.11 | Withdrawals from the Collection Account.......................... | |
| Section 3.12 | Investment of Funds in the Collection Account, Escrow Accounts and the Distribution Account........................... | |
| Section 3.13 | Maintenance of Hazard Insurance and Errors and Omissions and Fidelity Coverage.......................................... | |
| Section 3.14 | Enforcement of Due-On-Sale Clauses; Assumption Agreements........ | |
| Section 3.15 | Realization upon Defaulted Mortgage Loans........................ | |
| Section 3.16 | Release of Mortgage Files........................................ | |
| Section 3.17 | Title, Conservation and Disposition of REO Property.............. | |
| Section 3.18 | Notification of Adjustments...................................... | |
| Section 3.19 | Access to Certain Documentation and Information Regarding the Mortgage Loans.............................................. | |
| Section 3.20 | Documents, Records and Funds in Possession of the Servicer to Be Held for the Trustee............................. | |

Section 3.21  Servicing Compensation...........................................
Section 3.22  Annual Statement as to Compliance................................
Section 3.23  Annual Independent Public Accountants' Servicing
              Statement; Financial Statements..................................
Section 3.24  Trustee to Act as Servicer.......................................
Section 3.25  Compensating Interest............................................
Section 3.26  Credit Reporting; Gramm-Leach-Bliley Act.........................

                                  ARTICLE IV

                              DISTRIBUTIONS AND
                             ADVANCES BY THE SERVICER

Section 4.01  Advances.........................................................
Section 4.02  Priorities of Distribution.......................................
Section 4.03  Monthly Statements to Certificateholders.........................
Section 4.04  Certain Matters Relating to the Determination of LIBOR...........
Section 4.05  Allocation of Applied Realized Loss Amounts......................

                                  ARTICLE V

                               THE CERTIFICATES

Section 5.01  The Certificates.................................................
Section 5.02  Certificate Register; Registration of Transfer and
              Exchange of Certificates.........................................
Section 5.03  Mutilated, Destroyed, Lost or Stolen Certificates................
Section 5.04  Persons Deemed Owners............................................
Section 5.05  Access to List of Certificateholders' Names and Addresses........
Section 5.06  Maintenance of Office or Agency..................................

                                  ARTICLE VI

                         THE DEPOSITOR AND THE SERVICER

Section 6.01  Respective Liabilities of the Depositor and the Servicer.........
Section 6.02  Merger or Consolidation of the Depositor or the Servicer.........
Section 6.03  Limitation on Liability of the Depositor, the Servicer
              and Others.......................................................
Section 6.04  Limitation on Resignation of the Servicer........................
Section 6.05  Additional Indemnification by the Servicer; Third Party
              Claims...........................................................

                                  ARTICLE VII

                                   DEFAULT

Section 7.01  Events of Default................................................
Section 7.02  Trustee to Act; Appointment of Successor.........................
Section 7.03  Notification to Certificateholders...............................

                                 ARTICLE VIII

                              CONCERNING THE TRUSTEE

Section 8.01  Duties of the Trustee............................................
Section 8.02  Certain Matters Affecting the Trustee............................
Section 8.03  Trustee Not Liable for Certificates or Mortgage Loans............
Section 8.04  Trustee May Own Certificates.....................................
Section 8.05  Trustee's Fees and Expenses......................................
Section 8.06  Eligibility Requirements for the Trustee.........................
Section 8.07  Resignation and Removal of the Trustee...........................
Section 8.08  Successor Trustee................................................
Section 8.09  Merger or Consolidation of the Trustee...........................
Section 8.10  Appointment of Co-Trustee or Separate Trustee....................
Section 8.11  Tax Matters......................................................
Section 8.12  Periodic Filings.................................................
Section 8.13  Tax Classification of the Excess Reserve Fund Account and
              the Cap Agreements...............................................

                                  ARTICLE IX

                                 TERMINATION

Section 9.01  Termination upon Liquidation or Purchase of the Mortgage
              Loans............................................................
Section 9.02  Final Distribution on the Certificates...........................
Section 9.03  Additional Termination Requirements..............................

                                  ARTICLE X

MISCELLANEOUS PROVISIONS

Section 10.01 Amendment............................................................
Section 10.02 Recordation of Agreement; Counterparts...............................
Section 10.03 Governing Law........................................................
Section 10.04 Intention of Parties.................................................
Section 10.05 Notices..............................................................
Section 10.06 Severability of Provisions...........................................
Section 10.07 Assignment...........................................................
Section 10.08 Limitation on Rights of Certificateholders...........................
Section 10.09 Inspection and Audit Rights..........................................
Section 10.10 Certificates Nonassessable and Fully Paid............................
Section 10.11 Assignment; Sales; Advances Facilities...............................
Section 10.12 Rule of Construction.................................................
Section 10.13 Waiver of Jury Trial.................................................

<PAGE>

SCHEDULES

Schedule I        Mortgage Loan Schedule

Schedule II       Representations and Warranties of the Servicer

Schedule III      Representations and Warranties of the Responsible Party as to
                  the Mortgage Loans

Schedule IV       Representations and Warranties as to the Responsible Party

EXHIBITS

Exhibit A         Form of Class A, Class M and Class B Certificate

Exhibit B         Form of Class P Certificate

Exhibit C         Form of Class R Certificate

Exhibit D         Form of Class X Certificate

Exhibit E         Form of Initial Certification of Trustee

Exhibit F         Form of Document Certification and Exception Report of Trustee

Exhibit G         Form of Residual Transfer Affidavit

Exhibit H         Form of Transferor Certificate

Exhibit I         Form of Rule 144A Letter

Exhibit J         Form of Request for Release

Exhibit K         Form of Contents for Each Mortgage File

Exhibit L         Form of Certification to be provided with Form 10-K

Exhibit M         Form of Trustee's Certification to be provided to Depositor

Exhibit N         Form of Servicer's Certification to be provided to Depositor

<PAGE>

        THIS POOLING AND SERVICING AGREEMENT, dated as of March 1, 2004, among SECURITIZED ASSET BACKED RECEIVABLES LLC, a Delaware limited liability company, as depositor (the "Depositor"), OPTION ONE MORTGAGE CORPORATION, a California corporation, as servicer and responsible party (the "Servicer" or "Responsible Party"), and WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association, as trustee (the "Trustee"),

W I T N E S S E T H:

        In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

PRELIMINARY STATEMENT

        The Trustee shall elect that two segregated asset pools within the Trust Fund be treated for federal income tax purposes as comprising two REMICs (each, a "REMIC" or, in the alternative, the Lower Tier REMIC and the Upper Tier REMIC, respectively). Each Class of Certificates (other than the Class P and Class R Certificates), other than the right of each Class of LIBOR Certificates to receive Basis Risk CarryForward Amounts and the right of the Class X

Subservicer or the Servicer, and the Servicer either shall service directly the related Mortgage Loans or shall enter into a Subservicing Agreement with a successor Subservicer which qualifies under Section 3.02.

Any Subservicing Agreement shall include the provision that such agreement may be immediately terminated by the Depositor or the Trustee without fee, in accordance with the terms of this Agreement, in the event that the Servicer shall, for any reason, no longer be the Servicer (including termination due to an Event of Default).

Section 3.04 Liability of the Servicer. Notwithstanding any Subservicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Servicer and a Subservicer or reference to actions taken through a Subservicer or otherwise, the Servicer shall remain obligated and primarily liable to the Trustee for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue of such Subservicing Agreements or arrangements or by virtue of indemnification from the Subservicer and to the same extent and under the same terms and conditions as if the Servicer alone were servicing and administering the Mortgage Loans. The Servicer shall be entitled to enter into any agreement with a Subservicer for indemnification of the Servicer by such Subservicer and nothing contained in this Agreement shall be deemed to limit or modify such indemnification.

Section 3.05 No Contractual Relationship between Subservicers and the Trustee. Any Subservicing Agreement that may be entered into and any transactions or services relating to the Mortgage Loans involving a Subservicer in its capacity as such shall be deemed to be between the Subservicer and the Servicer alone, and the Trustee (or any successor Servicer) shall not be deemed a party thereto and shall have no claims, rights, obligations, duties or liabilities with respect to the Subservicer except as set forth in Section 3.06. The Servicer shall be solely liable for all fees owed by it to any Subservicer, irrespective of whether the Servicer's compensation pursuant to this Agreement is sufficient to pay such fees.

Section 3.06 Assumption or Termination of Subservicing Agreements by Trustee. In the event the Servicer at any time shall for any reason no longer be the Servicer (including by reason of the occurrence of an Event of Default), the Trustee, or its designee or the successor Servicer if the successor is not the Trustee, shall thereupon assume all of the rights and obligations of the Servicer under each Subservicing Agreement that the Servicer may have entered into, with copies thereof provided to the Trustee or the successor Servicer if the successor is not the Trustee, prior to the Trustee or the successor Servicer if the successor is not the Trustee, assuming such rights and obligations, unless the Trustee elects to terminate any Subservicing Agreement in accordance with its terms as provided in Section 3.03.

Upon such assumption, the Trustee, its designee or the successor servicer shall be deemed, subject to Section 3.03, to have assumed all of the Servicer's interest therein and to have replaced the Servicer as a party to each Subservicing Agreement to the same extent as if each Subservicing Agreement had been assigned to the assuming party, except that (i) the Servicer shall not thereby be relieved of any liability or obligations under any Subservicing Agreement that arose before it ceased to be the Servicer and (ii) none of the Depositor, the Trustee, their designees or any successor Servicer shall be deemed to have assumed any liability or obligation of the Servicer that arose before it ceased to be the Servicer.

The Servicer at its expense shall, upon request of the Trustee, its designee or the successor Servicer deliver to the assuming party all documents and records relating to each Subservicing Agreement and the Mortgage Loans then being serviced and an accounting of amounts collected and held by or on behalf of it, and otherwise use its best efforts to effect the orderly and efficient transfer of the Subservicing Agreements to the assuming party.

Section 3.07 Collection of Certain Mortgage Loan Payments. (a) The Servicer shall make reasonable efforts to collect all payments called for under the terms and provisions of the Mortgage Loans, and shall, to the extent such procedures shall be consistent with this Agreement and the terms and provisions of any applicable Insurance Policies, follow such collection procedures as it would follow with respect to mortgage loans comparable to the Mortgage Loans and held for its own account. Consistent with the foregoing and Accepted Servicing Practices, the Servicer may (i) waive any late payment charge or, if applicable, any penalty interest, or (ii) extend the due dates for the Scheduled Payments due on a Mortgage Note for a period of not greater than 360 days; provided, that any extension pursuant to clause (ii) above shall not affect the amortization schedule of any Mortgage Loan for purposes of any computation hereunder, except as provided below. In the event of any such arrangement pursuant to clause (ii) above, the Servicer shall make timely advances on such Mortgage Loan during such extension pursuant to Section 4.01 and in accordance with the amortization schedule of such Mortgage Loan without modification thereof by reason of such

arrangements, subject to Section 4.01(d) pursuant to which the Servicer shall not be required to make any such advances that are Nonrecoverable P&I Advances. Notwithstanding the foregoing, the Servicer may waive, in whole or in part, a Prepayment Charge only under the following circumstances: (i) such waiver relates to a default or a reasonably foreseeable default and would, in the reasonable judgment of the Servicer, maximize recovery of total proceeds taking into account the value of such Prepayment Charge and the related Mortgage Loan or (ii) such Prepayment Charge is not permitted to be collected by applicable law. If a Prepayment Charge is waived other than as permitted by the prior sentence, then the Servicer is required to pay the amount of such waived Prepayment Charge, for the benefit of the Holders of the Class P Certificates, by depositing such amount into the Collection Account together with and at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Collection Account.

(b) (i) The Trustee shall establish and maintain the Excess Reserve Fund Account, on behalf of the Class X Certificateholders, to receive any Basis Risk Payment and any Interest Rate Cap Payment and to secure their limited recourse obligation to pay to the LIBOR Certificateholders Basis Risk CarryForward Amounts.

(ii) On each Distribution Date, the Trustee shall deposit the amount of any Basis Risk Payment and any Interest Rate Cap Payment for such date into the Excess Reserve Fund Account.

(c) (i) On each Distribution Date on which there exists a Basis Risk CarryForward Amount on any Class of Certificates, the Trustee shall (1) withdraw from the Distribution Account and deposit in the Excess Reserve Fund Account, as set forth in Section 4.02(a)(iii)(M), the lesser of (x) the Class X Distributable Amount (without regard to the reduction in the definition thereof with respect to the Basis Risk Payment) (to the extent remaining after the distributions specified in Sections 4.02(a)(iii)(A)-(L)) and (y) the aggregate Basis Risk CarryForward Amounts for such Distribution Date and (2) withdraw from the Excess Reserve Fund Account amounts necessary to pay to such Class or Classes of Certificates the Basis Risk CarryForward Amount. Such payments shall be allocated to those Classes on a pro rata basis based upon the amount of Basis Risk CarryForward Amount owed to each such Class and shall be paid in the priority set forth in Sections 4.02(a)(iii)(N)-(O).

(ii) The Trustee shall account for the Excess Reserve Fund Account as an asset of a grantor trust under subpart E, Part I of subchapter J of the Code and not as an asset of any REMIC created pursuant to this Agreement. The beneficial owners of the Excess Reserve Fund Account are the Class X Certificateholders. For all federal tax purposes, amounts transferred by the Upper Tier REMIC to the Excess Reserve Fund Account shall be treated as distributions by the Trustee to the Class X Certificateholders.

(iii) Any Basis Risk CarryForward Amounts paid by the Trustee to the LIBOR Certificateholders shall be accounted for by the Trustee as amounts paid first to the Holders of the Class X Certificates and then to the respective Class or Classes of LIBOR Certificates. In addition, the Trustee shall account for the LIBOR Certificateholders' rights to receive payments of Basis Risk CarryForward Amounts as rights in a limited recourse interest rate cap contract written by the Class X Certificateholders in favor of the LIBOR Certificateholders.

(iv) Notwithstanding any provision contained in this Agreement, the Trustee shall not be required to make any payments from the Excess Reserve Fund Account except as expressly set forth in this Section 3.07(c) and Sections 4.02(a)(iii)(N)-(P).

(d) The Trustee shall establish and maintain the Distribution Account on behalf of the Certificateholders. The Depositor shall cause to be deposited into the Distribution Account on the Closing Date the Closing Date Deposit Amount. The Trustee shall, promptly upon receipt, deposit in the Distribution Account and retain therein the following:

(i) the aggregate amount remitted by the Servicer to the Trustee pursuant to Section 3.11;

(ii) any amount deposited by the Servicer pursuant to Section 3.12(b) in connection with any losses on Permitted Investments; and

(iii) any other amounts deposited hereunder which are required to be deposited in the Distribution Account.

In the event that the Servicer shall remit any amount not required to be remitted, it may at any time direct the Trustee in writing to withdraw such amount from the Distribution Account, any provision herein to the contrary notwithstanding. Such direction may be accomplished by delivering notice to the

Trustee which describes the amounts deposited in error in the Distribution Account. All funds deposited in the Distribution Account shall be held by the Trustee in trust for the Certificateholders until disbursed in accordance with this Agreement or withdrawn in accordance with Section 4.02. In no event shall the Trustee incur liability for withdrawals from the Distribution Account at the direction of the Servicer.

(e) The Trustee may invest the funds in the Distribution Account (for purposes of this Section 3.07 a "Trustee Investment Account"), in one or more Permitted Investments bearing interest or sold at a discount, and maturing, unless payable on demand, no later than the Business Day immediately preceding the date on which such funds are required to be withdrawn from such account pursuant to this Agreement; provided, however, that any such Permitted Investment managed or advised by the Trustee or any of its Affiliates may mature, unless payable on demand, no later than the date on which such funds are required to be withdrawn from such account pursuant to this Agreement. All such Permitted Investments shall be held to maturity, unless payable on demand. Any investment of funds in a Trustee Investment Account shall be made in the name of the Trustee. The Trustee shall be entitled to sole possession over each such investment, and any certificate or other instrument evidencing any such investment shall be delivered directly to the Trustee or its agent, together with any document of transfer necessary to transfer title to such investment to the Trustee. In the event amounts on deposit in a Trustee Investment Account are at any time invested in a Permitted Investment payable on demand, the Trustee may:

(x)  consistent with any notice required to be given thereunder, demand that payment thereon be made on the last day such Permitted Investment may otherwise mature hereunder in an amount equal to the lesser of (1) all amounts then payable thereunder and (2) the amount required to be withdrawn on such date; and

(y)  demand payment of all amounts due thereunder that such Permitted Investment would not constitute a Permitted Investment in respect of funds thereafter on deposit in the Investment Account.

(f) (i) All income and gain realized from the investment of funds deposited in the Distribution Account held by or on behalf of the Trustee, shall be for the benefit of the Trustee during the Trustee Float Period and shall be subject to its withdrawal. In regard to the Distribution Account, the Trustee shall deposit in the Distribution Account the amount of any loss of principal incurred during the Trustee Float Period in respect of any such Permitted Investment made with funds in such account immediately upon realization of such loss.

(ii) Except as otherwise expressly provided in this Agreement, if any default occurs in the making of a payment due under any Permitted Investment, or if a default occurs in any other performance required under any Permitted Investment, the Trustee shall take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate proceedings. The Trustee shall not be liable for the amount of any loss incurred in respect of any investment or lack of investment of funds held in the Investment Account or the Distribution Account if made in accordance with this Section 3.07.

(g) The Servicer shall give notice to the Trustee, each Rating Agency and the Depositor of any proposed change of the location of the Collection Account not later than 30 days and not more than 45 days prior to any change thereof.

Section 3.08 Subservicing Accounts. In those cases where a Subservicer is servicing a Mortgage Loan pursuant to a Subservicing Agreement, the Subservicer will be required to establish and maintain one or more segregated accounts (collectively, the "Subservicing Account"). The Subservicing Account shall be an Eligible Account and shall otherwise be acceptable to the Servicer. The Subservicer shall deposit in the clearing account (which account must be an Eligible Account) in which it customarily deposits payments and collections on mortgage loans in connection with its mortgage loan servicing activities on a daily basis, and in no event more than one Business Day after the Subservicer's receipt thereof, all proceeds of Mortgage Loans received by the Subservicer less its servicing compensation to the extent permitted by the Subservicing Agreement, and shall thereafter deposit such amounts in the Subservicing Account, in no event more than two Business Days after the deposit of such funds into the clearing account. The Subservicer shall thereafter deposit such proceeds in the Collection Account or remit such proceeds to the Servicer for deposit in the Collection Account not later than two Business Days after the deposit of such amounts in the Subservicing Account. For purposes of this Agreement, the Servicer shall be deemed to have received payments on the Mortgage Loans when the Subservicer receives such payments.