**Q: Why force banks to forgive large portions of peoples' loans?**

A: The states and federal agencies established that the servicers have done wrong – through improper lending practices, improper foreclosures, etc. – and in response the banks have agreed to a settlement that helps many homeowners who have been hurt by misconduct in the marketplace.

Some banks have already acknowledged that principal reduction can be effective tool in stabilizing the housing market and have already been forgiving portions of some loans. The idea is to keep people in their homes. The banks lose, on average, about $60,000 on each foreclosure. It is a win-win proposition for the banks to give up some principal – instead of that $60,000 cost of each foreclosure – and allow people to remain in their homes. As a matter of pure economics, principal reduction is often better for the bank than the massive losses associated with foreclosure.

The huge number of foreclosures impacts all of us: our nest eggs erode, we may no longer borrow against our homes, and we can't sell them when we need to. Principal reduction is one of the tools we've negotiated to help keep more people in their homes and help stabilize the housing market — which helps all of us. It's true that principal forgiveness at this level is extraordinary. But so is the mortgage crisis, which affects families, our neighborhoods and our economy. Big problems require big solutions.


**Q: Will investors in mortgage-backed securities ultimately pay for part of this settlement?**

A: Participating banks own the vast majority of the mortgage loans that this settlement is expected to affect. The settlement could affect some investor-owned loans, depending on existing agreements servicers have with those investors.

When banks weigh which mortgage loans to modify as part of this settlement, they will do so based on first analyzing the costs and the benefits of minimizing their losses. If a loan modification, including principal reduction, is projected to cost the creditor or investor less than foreclosure, the creditor will earn more on that loan.

In other words, this settlement will not force investors to incur losses. That's because any loan modification tied to this settlement will result in more of a financial return for an investor than a foreclosure would.


**Q: Will taxpayers ultimately pay for this settlement?**

A: No, the settlement is not funded by taxpayers.


**Q: If I have not yet been foreclosed, do I have to live in the house to be eligible for the Consumer Relief portion of the settlement?**

A: No. To qualify for the Consumer Relief portion of the settlement, the home must be occupied but there is no requirement that the owner of the home be the occupant. This is different from past settlements.


**Q: I see that a portion of the money Washington State receives is for "Attorney's Fees and Costs." Is the settlement a pay day for private lawyers?**