# Home Mortgage Consumer Protection

| :: ISSUES | 🗐 AGENCY DOCUMENTS | ≋ DRAFT SUMMARY | = FINAL SUMMARY | 🔲 FINAL RULE |
|---|---|---|---|---|

- ▣ TILA: NPRM
- ▣ TILA: Commentary
- ▣ TILA: Preamble
- ▣ TILA: Regulatory Analysis
- ▣ TILA Rule Text
- ▣ TILA: Forms

- ▣ RESPA: NPRM
- ▣ RESPA: Commentary
- ▣ RESPA: Preamble
- ▣ RESPA: Regulatory Analysis
- ▣ RESPA: Rule Text
- ▣ RESPA: Forms

## RESPA: Preamble

Go to Table of Contents

BUREAU OF CONSUMER FINANCIAL PROTECTION

12 CFR Part 1024

[Docket No. CFPB-2012-0034]

RIN 3170-AA14

2012 Real Estate Settlement Procedures Act (Regulation X) Mortgage Servicing Proposal

AGENCY: Bureau of Consumer Financial Protection.

ACTION: Proposed rule with request for public comment.

SUMMARY: The Bureau of Consumer Financial Protection (the Bureau) is proposing to amend Regulation X, which implements the Real Estate Settlement Procedures Act of 1974 (RESPA) and the official interpretation of the regulation. The proposed amendments implement the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) provisions regarding mortgage loan servicing. Specifically, this proposal requests comment regarding proposed additions to Regulation X to address seven servicer obligations: to correct errors asserted by mortgage loan borrowers; to provide information requested by mortgage loan borrowers; to ensure that a reasonable basis exists to obtain force-placed insurance; to establish reasonable information management policies and procedures; to provide information about mortgage loss mitigation options to delinquent borrowers; to provide delinquent borrowers access to servicer personnel with continuity of contact about the borrower's mortgage loan account; and to evaluate borrowers' applications for available loss mitigation options.

This proposal would also modify and streamline certain existing servicing-related provisions of Regulation X. For instance, the proposal would revise provisions relating to a mortgage servicer's obligation to provide disclosures to borrowers in connection with a transfer of mortgage servicing, and a mortgage servicer's obligation to manage escrow

Case 1:13-bk-10051  Doc 52-6  Filed 08/20/13  Entered 08/20/13 15:24:00  Desc
Exhibit F  Page 2 of 4

accounts, including the obligation to advance funds to an escrow account to maintain insurance coverage and to return amounts in an escrow account to a borrower upon payment in full of a mortgage loan.

Published elsewhere in today's *Federal Register*, the Bureau proposes companion regulations implementing amendments to the Truth In Lending Act (TILA) in Regulation Z (the 2012 TILA Servicing Proposal).

**DATES:** Comments must be received on or before October 9, 2012, except that comments on the Paperwork Reduction Act analysis in part IX of this *Federal Register* notice must be received on or before November 16, 2012.

**ADDRESSES:** You may submit comments, identified by Docket No. CFPB-2012-0034 or RIN 3170-AA14, by any of the following methods:

- *Electronic*: http://www.regulations.gov. Follow the instructions for submitting comments.
- *Mail/Hand Delivery/Courier*: Monica Jackson, Office of the Executive Secretary, Consumer Financial Protection Bureau, 1700 G Street, NW, Washington, D.C. 20552.

*Instructions:* All submissions must include the agency name and docket number or Regulatory Information Number (RIN) for this rulemaking. In general, all comments received will be posted without change to http://www.regulations.gov. In addition, comments will be available for public inspection and copying at 1700 G Street, NW, Washington, D.C. 20552, on official business days between the hours of 10 a.m. and 5 p.m. Eastern Time. You can make an appointment to inspect the documents by telephoning (202) 435-7275.

All comments, including attachments and other supporting materials, will become part of the public record and subject to public disclosure. Sensitive personal information, such as account numbers or Social Security numbers, should not be included. Comments will not be edited to remove any identifying or contact information.

*e-Rulemaking Initiative*

The Bureau is working with the Cornell e-Rulemaking Initiative (CeRI) on a pilot project, Regulation Room, to use different web technologies and approaches to enhance public understanding and participation in Bureau rulemakings and to evaluate the advantages and disadvantages of these techniques. The TILA and RESPA proposed rulemakings on mortgage servicing are the subject of the project. The Bureau has undertaken this project to increase effective public involvement in the rulemaking process and strongly encourages all parties interested in this rulemaking to visit the Regulation Room website, http://www.regulationroom.org, to learn about the Bureau's proposed mortgage servicing rules and the rulemaking process, to discuss the issues in the rules with other persons and groups, and to participate in drafting a summary of that discussion that CeRI will submit to the Bureau.

Note that Regulation Room is sponsored by CeRI, and is not an official United States Government website. Participating in the discussion on that site will not result in individual formal comments that will be included in the Bureau's rulemaking record. If you would like to add a formal comment, please do so through the means identified above. The Bureau anticipates that CeRI will submit to the Bureau's rulemaking docket a summary of the discussion that occurs on the Regulation Room site and that participants will have a chance to review a draft and suggest changes before the summary is submitted. For questions about this project, please contact Whitney Patross, Attorney, Office of Regulations, at (202) 435-7700.

**FOR FURTHER INFORMATION CONTACT:**

**Regulation X (RESPA):** Jane Gao, Mitchell E. Hochberg, and Michael Scherzer, Counsels at (202) 435-7700; Office of Regulations, Division of Research, Markets, and Regulations, Bureau of Consumer Financial Protection; 1700 G Street, NW, Washington, DC 20552.

**Regulation Z (TILA):** Whitney Patross, Attorney and Marta Tanenhaus, Senior Counsel at (202) 435-7700; Office of Regulations, Division of Research, Markets, and Regulations, Bureau of Consumer Financial Protection; 1700 G Street, NW, Washington, DC 20552.

Servicers have also misled, or failed to communicate with, borrowers, lost or mishandled borrower-provided documents supporting loan modification requests, and generally provided inadequate service to delinquent borrowers. These problems became pervasive in broad segments of the mortgage servicing industry and had profound impacts on borrowers, particularly delinquent borrowers.[18]

The Bureau further understands from mortgage investors that there is a pervasive belief that servicers are making discretionary decisions based on the best interests of the servicer rather than to achieve results that will benefit owners or assignees of mortgages loans. When servicers hold a second lien that is behind a first lien owned by a different owner or assignee, one study has found a lower likelihood of liquidation and modification, and a higher likelihood of inaction by a servicer.[19] Specifically, "liquidation and modification of securitized first mortgages are 60% [to] 70% less likely respectively and no action is 13% more likely when the servicer of that securitized first mortgage holds on its portfolio the second lien attached to the first mortgage."[20] These failures to take actions that may benefit both consumers and owners or assignees of first lien mortgage loans harm consumers.

The mortgage servicing industry, however, is not monolithic. Some servicers provide high levels of customer service. Some of these servicers may be compensated by investors in a way that incentivizes them to provide high levels of customer service in order to optimize investor outcomes. Other servicers provide high levels of customer service because they rely on providing other products and services to consumers and thus have an interest in preserving their reputations and relationships with their consumers. For example, as discussed further below, small servicers that the Bureau consulted as part of a process required under SBREFA described their businesses as requiring a "high touch" model of customer service both to ensure loan performance and maintain a strong reputation in their local communities.[21]

### B. Mortgage Servicing Consumer Protection Regulation Before the Recent Crisis

Prior to the adoption of the Dodd-Frank Act, the mortgage servicing industry was subject to limited Federal consumer financial protection regulation. RESPA set forth basic protections with respect to mortgage servicing that were implemented by the U.S. Department of Housing and Urban Development (HUD). These included required disclosures at application concerning whether the lender intended to service the mortgage loan and disclosures upon an actual transfer of servicing rights.[22] RESPA further imposed substantive and disclosure requirements for escrow account management and required servicers to respond to "qualified written requests" – written error resolution or information requests relating to a restricted definition of the "servicing" of the borrower's mortgage loan.[23]

TILA set forth requirements on creditors that were implemented by servicers, including disclosures regarding interest rate adjustments on adjustable rate mortgage loans. Regulation Z, which implements TILA, was amended by the Board of Governors of the Federal Reserve System (the Board) to include certain limited requirements directly on servicers, such as requirements to timely credit payments, provide payoff balances and prohibit pyramiding of late fees.[24] Servicers also had some obligations under other Federal laws, including, for example, the Servicemembers Civil Relief Act.[25]

Although TILA and RESPA did not impose many requirements on servicers, servicers were still required to navigate overlapping requirements governing their servicing responsibilities. In addition to Federal law, servicers were required to consider the impact of State and even local regulation on mortgage servicing. Servicers also had to comply with investor requirements to the extent they serviced loans owned or guaranteed by various types of entities. These include (1) servicing guidelines required by Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), together known as the government-sponsored enterprises (GSEs), as well as servicing guidelines required by the Government National Mortgage Association (Ginnie Mae); (2) government insured program guidelines issued by the Federal Housing Administration (FHA), Department of Veterans Affairs (VA), and the Rural Housing Service; (3) contractual agreements with investors (such as pooling and servicing agreements and subservicing contracts); and (4) bank or institution policies. All those requirements remain in effect today and going forward.

### C. The National Mortgage Settlement and Other Regulatory Actions

In response to the unprecedented mortgage crisis and pervasive problems in mortgage servicing, including the systemic violation of State foreclosure laws by many of the largest servicers, State and Federal regulators have engaged in a number of individual servicing related enforcement and regulatory actions over the last few years and have begun discussions about comprehensive national standards.

For example, 49 State attorneys general,[26] joined by numerous Federal agencies including the Bureau, entered into a National Mortgage Settlement (National Mortgage Settlement) with the nation's five largest servicers in February 2012.[27] The National Mortgage Settlement applies to loans held in portfolio and serviced by the five largest servicers. Loans owned by GSEs, private investors, or smaller servicers are not covered by the settlement.

Exhibit A to each of the settlements is a Settlement Term Sheet, which sets forth standards that each of the five largest servicers must follow to comply with the terms of the settlement.[28] The settlement standards contained in the Settlement Term Sheet are sub-divided into the following eight categories: (1) foreclosure and bankruptcy information and documentation; (2) third-party provider oversight; (3) bankruptcy; (4) loss mitigation; (5) protections for military personnel; (6) restrictions on servicing fees; (7) force-placed insurance; and (8) general servicer duties and prohibitions.

In addition to the settlement, other Federal regulatory agencies have issued guidance on mortgage servicing and loan modifications,[29] conducted coordinated reviews of the nation's largest servicers,[30] and taken enforcement actions against individual companies.[31] The Bureau and other Federal agencies have also engaged since spring 2011 in informal discussions about the potential development of national mortgage servicing standards through regulations and guidance.

The Bureau's proposed rules under Regulation Z and X represent another important step towards establishing uniform minimum national standards. When adopted in final form, the Bureau's rules will apply to all mortgage servicers, whether depository institutions or non-depository institutions, and to all segments of the mortgage market, regardless of the ownership of the loan. The proposals focus both on implementing the specific mortgage servicing requirements of the Dodd-Frank Act and on addressing broader systemic problems that the Bureau believes are critical to ensure that the mortgage servicing market functions to serve consumer needs. To that end, the proposed TILA and RESPA mortgage servicing rules incorporate elements from four categories of the National Mortgage Settlement—(1) foreclosure and bankruptcy information and documentation, (4) loss mitigation, (6) restrictions on servicing fees, and (7) force-placed insurance. In addition, the proposed requirement to maintain reasonable information management policies and procedures addresses oversight of service providers, which impacts category (2) of the settlement.

The Bureau continues to consider whether to incorporate other settlement standards into rules or guidance, either alone or in conjunction with other Federal regulatory agencies; certain requests for comment in this proposal reflect these considerations. The Bureau is also continuing ongoing discussions with other regulators to ensure appropriate coordination of rulemaking and other initiatives relating to mortgage servicing issues.

### D. The Statutory Requirements and Additional Proposals

The Dodd-Frank Act mandates several protections for homeowners in the servicing of their loans. The Act requires new disclosures, specifically periodic statements (unless coupon books are provided in certain circumstances), notices prior to the reset of adjustable-rate mortgages, and force-placed insurance notices. These disclosures are designed to provide consumers with comprehensive and comprehensible information when they need it and in a form they can use, so they can better manage their obligations and avoid unnecessary problems.

The Dodd-Frank Act also imposes new requirements on servicers to respond in a timely way to borrowers who assert that their servicer made an error. The statute also requires servicers to respond in a timely way to borrower requests for information.

The Dodd-Frank Act contains requirements relating to the prompt crediting of payments, so that consumers are not wrongly penalized with late fees or other fees because servicers did not credit their payments quickly. The statute also requires servicers to provide timely responses to consumer requests for payoff amounts, so consumers can get this information when they need it, such as when refinancing.